**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN TACURI ALVARADO,<br><br>Petitioner,<br><br>v.<br><br>LUIS SOTO, *et al.*,<br><br>Respondents. | Civil Action No. 26-1032 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's habeas petition (ECF No. 1) challenging his ongoing immigration detention. Following an order to answer, the Government filed a response to the petition (ECF No. 5), to which Petitioner replied (ECF No. 6). For the following reasons, Petitioner's habeas petition shall be granted, and Petitioner shall be provided with a bond hearing within ten days at which the Government bears the burden of proof.

## I. BACKGROUND

Petitioner is a native and citizen Peru. (ECF No. 5-2 at 2.) On or about April 10, 2024, Petitioner crossed the southern border of the United States without being admitted or inspected by an immigration official. (*Id.* at 3.) Petitioner was taken into custody by immigration officials shortly after crossing the border and was determined to be inadmissible. Border officials determined that Petitioner did not have a credible fear of removal and Petitioner initially received an expedited removal order pursuant to 8 U.S.C. § 1225(b)(1). (ECF No. 5-3 at 2.) Petitioner appealed the negative credible fear finding to an immigration judge, who on April 20, 2024,

vacated the negative credible fear finding and issued Petitioner with a notice to appear for further proceedings related to his claimed credible fear of removal. (ECF No. 5-2 at 3.) Petitioner was paroled from mandatory detention that day. (*Id.*) On August 1, 2024, Petitioner was enrolled in a supervision program with reporting requirements as part of his parole from detention. (*Id.*) Petitioner, however, failed to report as required on August 1, 2025, and was thereafter mailed a notice to report to immigration officials. (*Id.* at 4.) On November 22, 2025, Petitioner reported to immigration officials and was returned to mandatory detention during the pendency of his removal proceedings. (*Id.*) Petitioner has remained detained pursuant to 8 U.S.C. § 1225(b)(1) since that time. (*Id.*) Although an immigration judge ordered Petitioner removed on February 3, 2026, Petitioner has filed an appeal of that order which remains pending before the Board of Immigration Appeals at this time. (ECF No. 5-6; ECF No. 5-7.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a federal court has jurisdiction over a habeas petition and habeas relief may be extended to a petitioner only if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III. DISCUSSION

Petitioner challenges his ongoing immigration detention without a bond hearing, which Petitioner contends is unlawful as he should be subject to detention only under 8 U.S.C. § 1226(a). The Government contends that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(1). An alien who attempts to enter the United States illegally and who is detained shortly after unlawfully crossing the border is "treated as an applicant for admission" and subject to the terms of § 1225(b)(1), which include both mandatory detention during removal proceedings and being subject to expedited removal. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40

(2020). As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.'" *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to § 1225(b)(1) are generally issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported, in which case they may be referred for further proceedings regarding that fear. *Id.* Pursuant to the statute, aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout removal or credible fear proceedings, although the Government may in its discretion temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's credible fear or removal proceedings, after which an alien would have a final order of removal, and detention under the statute ends. *Id.* at 300-03.

Section 1226(a) instead provides that an alien subject to removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." When the Government takes an alien into custody under this statute, however, the alien is entitled to seek release on bond through a hearing before an immigration judge at which the alien bears the burden of showing that he is neither a flight risk nor a danger to the community. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018). Aliens taken into custody within the United States after having entered and remained in the United States

for several years are therefore generally entitled to a bond hearing. *See, e.g.*, *Aguilar Ramos v. Soto*, No. 25-15315, 2025 WL 3251447 (D.N.J. Nov. 21, 2025).

In this matter, Petitioner was taken into custody a few days after crossing the border while still in close proximity to the border. Petitioner was reviewed and initially ordered removed through the expedited removal proceedings of 8 U.S.C. § 1225(b)(1). Because Petitioner falls into the category of aliens encountered within fourteen days of illegally crossing the border and within 100 air miles of the border, he was legitimately subject to the expedited removal and mandatory detention provisions of § 1225(b)(1) at the time he was taken into custody. *Castro*, 835 F.3d at 425. That Petitioner was paroled from mandatory detention following an immigration judge's finding of a credible fear does not change the applicability of section 1225(b)(1) and its mandatory detention requirements as to him. *See Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2-3 (D.N.J. Jan. 8, 2026). As this Court explained in *Faqirzada*,

> Even where an alien is granted humanitarian parole prior to a final decision on his removal proceedings, he does not cease being subject to § 1225(b)(1). As the parole statute makes clear,
>
> > such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission.
>
> 8 U.S.C. § 1182(d)(5)(A). Aliens who are paroled are thus subject to the "entry fiction" in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude. *See, e.g.*, *Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *6 (D.N.J. Jan. 29, 2018); *see also Pipa-Aquise v. Bondi*, No. 25-1094; 2025 WL 2490657, at * 1-2 (E.D. Va. Aug. 5, 2025). Federal courts generally lack jurisdiction to review the exercise of discretion embodied in the Government's decisions to grant or deny parole. *See Ashish v. Att'y*

> *Gen.*, 490 F. App'x 486, 487 (3d Cir. 2013) (citing 8 U.S.C. §§ 1182(d)(5)(A) & 1252(a)(2)(B)(ii)).

*Faqirzada*, 2026 WL 63614, at *2-3. Aliens such as Petitioner who are paroled from mandatory detention therefore remain subject to mandatory detention once the Government chooses in its discretion to terminate their parole, and they are treated legally as if they had remained at the border throughout the entirety of their parole. *Id.*; *see also Shakibullah Noori v. Soto*, No. 26-951, 2026 WL 631642, at *2 (D.N.J. Mar. 5, 2026) (release on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) requires a return to mandatory detention status when the Government chooses to terminate parole); *Salama v. Soto*, No. 25-18990, 2026 WL 368935, at *2 (D.N.J. Feb. 10, 2026) (alien re-detained after being released on parole remains subject to mandatory detention under 8 U.S.C. § 1225(b)(1)); *Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *2 (D.N.J. Feb. 2, 2026) (same).

Because Petitioner was taken into custody under § 1225(b)(1) and was later paroled, he remains subject to mandatory detention under that statute now that the Government has terminated his parole. Indeed, pursuant to the only statute which permits the paroling of § 1225(b)(1) detainees, 8 U.S.C. § 1182(d)(5)(A), he was required to "return or be returned to the custody from which he was paroled" and be treated as any other applicant for admission subject to mandatory detention once the Government determined that his parole had served its purpose. *Salem v. Tsoukaris*, No. 25-17414, 2026 WL 458302, at *2 (D.N.J. Feb. 18, 2026). Petitioner is therefore properly subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(1), and his detention under that statute is lawful until such time as his appeal to the Board of Immigration Appeals concludes. *See Jennings*, 583 U.S. at 287, 302-03 (detention under § 1225(b) remains mandatory throughout required removal or credible fear proceedings). Petitioner's assertion that he is not subject to mandatory detention or is entitled to a bond hearing is therefore without merit.

In addition to his claim that he is not subject to mandatory detention, Petitioner asserts that his detention violates his Due Process rights. Although § 1225(b)(1) detainees have no general right to a bond hearing upon being taken back into custody,[1] courts in this district have long recognized that an alien subject to mandatory detention may be entitled to a corrective bond hearing where their detention becomes so prolonged as to become arbitrary. *See Salem*, 2026 WL 458302, at *3; *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442 (D.N.J. 2019) (nineteen month detention so unreasonable as to be arbitrary and amount to a denial of due process); *see also German Santos v. Warden*, 965 F.3d 203 (3d Cir. 2020) (finding that prolonged detention under the similar mandatory detention provision of 8 U.S.C. § 1226(c) can, after considering relevant circumstances, become so prolonged as to warrant a bond hearing where an alien has been detained for an extended period, such as the two-and-a-half-year period at issue in *German Santos*).

In determining whether detention has become so prolonged as to become arbitrary in the absence of a bond hearing, courts look to factors, including the length of detention, the likelihood of lengthy continued detention in the future, the reasons for delay in removal proceedings, and

[1] Petitioner contends that he has a general Due Process right to a bond hearing, citing to *Matthews v. Eldridge*, 424 U.S. 319 (1976). In *Matthews*, the Supreme Court established a balancing test for determining what process was required before a person could be deprived of a protected liberty or property interest, specifically in regards to the decision to remove disability benefits. *Id.* For the *Matthews* test to apply, Petitioner would need to have an unqualified liberty interest in his freedom at the time his parole was revoked which was impugned by his redetention. Aliens subject to § 1225(b)(1), however, "have only those [Due Process] rights . . . that Congress has provided by statute," which does not include detailed Due Process review of statutory removal proceedings. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Here, the statute does not provide for an entitlement to release on bond or otherwise, and the only applicable parole statute does not provide for an unqualified liberty interest. Instead, it specifically states that an alien may be paroled only so long as the Government in its discretion determines that parole is warranted. Petitioner's parole from custody was therefore specifically premised on the idea that he would be required to return or be returned to custody once the Government determined that his parole was no longer warranted by humanitarian concerns. Whatever liberty interest Petitioner may have had was therefore expressly limited. It was always subject to termination at the Government's discretion, and Petitioner's interest therefore could not be impugned by the Government choosing to end its discretionary extension of parole to Petitioner.

whether the alien's conditions of confinement are "meaningfully different[] from criminal punishment." *German Santos*, 965 F. 3d at 211. Once a court finds that detention has become so prolonged so as to become arbitrary, the petitioner will be entitled to a bond hearing before an immigration judge at which the Government bears the burden of proving that the petitioner is a flight risk or danger to the community by clear and convincing evidence. *Id.* at 213-14.

Although the Third Circuit in *German Santos* did not adopt a bright line threshold for when continued mandatory detention without bond will become suspect, *id.*, the Supreme Court found no Due Process violation for mandatory detention which lasted approximately six months in *Demore v. Kim*, 538 U.S. 510, 531 (2003), and the Third Circuit in prior cases has suggested that mandatory detention without bond becomes questionable at some point "after the six-month timeframe considered by *Demore*, and certainly by the time [the petitioner] had been detained for one year." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015), *abrogated by Jennings*, 583 U.S. at 281; *see also Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026) (mandatory detention under similar provisions of § 1226(c) without bond will become suspect "sometime between six months and one year").

In this matter, Petitioner was taken into custody in November 2025. He has remained in custody since that time. Petitioner's mandatory detention has thus continued for well over six months and is unlikely to conclude in the foreseeable future as his appeal is ongoing. Petitioner has spent this time in a facility that is not dissimilar to a county jail and is not significantly distinguishable from criminal detention. The Court therefore finds that his continued detention without bond has become so prolonged, and is likely to continue to be prolonged, that it will become arbitrary and unlawful without the provision of a bond hearing at which the Government

bears the burden of proving that Petitioner is a danger to the community or a flight risk by clear and convincing evidence.[2]

## IV. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED,** and Petitioner shall be provided a bond hearing before an immigration judge at which the Government bears the burden of proving he is a flight risk or danger to the community by clear and convincing evidence. An order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 8/12/26

[2] Although Petitioner shall be provided with a bond hearing, and may well be released on bond following that hearing, any grant of release shall not be construed as an admission of Petitioner into the United States for immigration purposes, nor will it provide Petitioner with any entitlement to remain that he did not already possess. Release on bond likewise would not prevent the Government from taking Petitioner back into custody under 8 U.S.C. § 1231(a) once his appeal before the BIA concludes and he is subject to an administratively final order of removal.